## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIVING ASSISTANCE SERVICES, INC.,  :
                                    :
            Plaintiff,              :      CIVIL ACTION NO. _____
                                    :
    vs.                             :
                                    :
CAROLYN THOMPSON and SHANNON        :
THOMPSON,                           :
                                    :
            Defendants.             :
                                    :

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Living Assistance Services, Inc. ("LAS"), by and through its undersigned

attorneys, avers as follows:

### NATURE OF THE CASE

1. This is a claim for breach of contract and unfair competition in which a franchisor

seeks preliminary and permanent injunctive relief to stop two individual franchisees' ongoing

breach of a franchise agreement.

2. As detailed below, LAS is a franchisor of non-medical home caregiving services

businesses nationwide.  Notwithstanding Defendants' agreement not to compete with LAS and its

other franchisees, they have brazenly established a consulting business in the home caregiving

industry and are misappropriating and divulging LAS's confidential and proprietary information,

business methods, and trade secrets to actual or potential competitors of LAS and its other

franchisees. These actions are expressly prohibited by the Franchise Agreement and should be

enjoined.

3. LAS also asks the Court to declare that Defendants have violated their franchise

agreement with LAS and order Defendants to pay LAS's reasonable costs and expenses, including

1

attorneys' fees, incurred in enforcing the franchise agreement, pursuant to that agreement.  In the alternative, LAS seeks money damages in an amount to be determined at trial.

## PARTIES

4.  Plaintiff LAS is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 28 W. Eagle Rd., Ste. 201, Havertown, PA 19083.

5.  Defendant Carolyn Thompson is a citizen and resident of the State of Minnesota whose personal address is 5810 Hackmann Ave. NE, Fridley, MN 55432 and whose business address is 3550 Lexington Ave. N #211, Shoreview, MN 55126.

6.  Defendant Shannon R. Thompson is a citizen and resident of the State of Minnesota whose business address is 3550 Lexington Ave. N #211, Shoreview, MN 55126.

7.  For ease of reference, where appropriate, Carolyn Thompson and Shannon R. Thompson shall be referred to collectively as "Defendants."

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.  This Court has personal jurisdiction over Defendants because, among other things, Defendants contractually consented to the jurisdiction of the Court in the Franchise Agreement they signed with LAS.  (*See* Exhibits A ¶ 20 & C ¶ 19.)

10.  Venue of this action is proper in this judicial district because, among other things, Defendants contractually consented to this venue in the Franchise Agreement they signed with LAS.  (*See* Exhibits A ¶ 20 & C ¶ 19.)  Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in

2

this district, including that the Franchise Agreement at issue was executed in this district. (Exhibit A at p. 40.)

## THE NATURE OF LAS'S BUSINESS

11.  LAS is engaged in the business of franchising "Visiting Angels" non-medical home care businesses nationwide.

12.  LAS's Visiting Angels franchisees provide private duty home care services to adults with disabilities and seniors who require assistance with "Activities of Daily Living," such as 24-hour care, respite care for family caregivers, home or hospital companionship, personal care/hygiene assistance with bathing, dressing and grooming, meal planning and preparation, light housekeeping and laundry, errands and shopping, medication reminders, and/or personal post-recovery care.

13.  LAS's Visiting Angels franchisees are licensed to use LAS's trade names, services marks and trademarks and to utilize Visiting Angels' confidential and proprietary business methods.  LAS provides Visiting Angels franchisees with specialized training and assistance in all facets of operating and promoting a Visiting Angels franchise business.  Areas in which Visiting Angels franchisees are trained include operations, advertising and accounting.  LAS also provides Visiting Angels franchisees with a confidential, detailed Operations Manual.

14.  As partial consideration for these intellectual property rights and this training, LAS's Visiting Angels franchisees pay fees to LAS and participate in a cooperative advertising program.

15.  The relationship between LAS and its Visiting Angels franchisees is governed by the terms and conditions of the LAS franchise agreement entered into between LAS and each franchisee.  As partial consideration for LAS's agreement to disclose its confidential and proprietary business methods and trade secrets to Visiting Angels franchisees, all franchisees agree not to engage in any home caregiving business, including consulting in the home caregiving

3

business, during the term of their franchise agreement ("in-term covenant") and for two (2) years
after the termination or expiration of their franchise agreement, within a 20-mile radius of their
Visiting Angels franchise business ("post-term covenant").

16.  The in-term and post-term covenants – which are present in all the franchise
agreements into which LAS enters, including the franchise agreement signed by Defendants – are
essential to maintaining the integrity of LAS's franchising system, trade secrets and confidential
and proprietary information and to protecting other franchisees from unfair competition from
current and former franchisees.

### DEFENDANTS' VISITING ANGELS FRANCHISE

17.  On or about May 18, 2009, LAS entered into a franchise agreement with Defendant
Carolyn Thompson and another franchisee, who was later removed.  A true and correct copy of
that franchise agreement is attached hereto as Exhibit A.  For ease of reference, that agreement, as
amended, shall be referred to as the "Franchise Agreement."

18.  Under the original Franchise Agreement, the term of the franchise was for ten (10)
years, and Defendants had the option to renew the Franchise Agreement, under specified
circumstances, for an additional ten (10) years.  (*See* Exhibit A § 2.)

19.  The Franchise Agreement provides that during the term of the franchise, Franchisees
"shall not engage in any home caregiving business."  (Exhibit A § 15.)  It defines "engaging" to
include "activities whether direct or indirect, as an individual proprietor, partner, stockholder,
director, officer, principal, broker, agent, employee, consultant or lender."  (Exhibit A § 15.)

20.  Defendants agreed in the Franchise Agreement not to compete against LAS, including
by operating (or being a proprietor, partner, stockholder, director, officer, principal, consultant of)
a consulting business in the home caregiving industry.  (Exhibit A § 15.)

4

21. Section 15 of the Franchise Agreement provides:

> You acknowledge that as a participant in our Franchise System, you will receive confidential information and material, trade secrets, and the unique methods, procedures and techniques which we have developed. Therefore to protect us and all of our franchisees, you agree: that while you are a VISITING ANGELS Living Assistance Services Franchisee, you shall not engage in any home caregiving business …. Engaging shall include, but not be limited to, activities whether direct or indirect, as an individual proprietor, partner, stockholder, director, officer, principal, broker, agent, employee, consultant or lender…. If you are found to be engaging in a similar endeavor while a Franchisee, you agree to pay to us, damages equal to 15% of the Gross Revenues generated by the endeavor. Payment of damages shall not preclude us from filing any other claims we believe are appropriate, to include injunctive relief without the posting of any bonds in the event of a violation of this provision, or any provision in this Agreement. Failure on your part to comply with the terms of this Agreement could cause irreparable damage to our Franchise System….

(Exhibit A § 15.)

22. Defendants further agreed that the Franchise Agreement "represents a personal guarantee of performance with respect to all restrictive covenants within this Agreement." (Exhibit A § 21.)

23. Subject to applicable law, the Franchise Agreement permits LAS to terminate the Franchise Agreement immediately upon delivery of a notice of termination if Defendants violate "any of the covenants not to compete." (Exhibit A § 12.4(4).)

24. The Franchise Agreement provides: "[U]nless contrary to the fundamental public policies of applicable law in your state, this Agreement shall be governed by and enforced in accordance with the laws of the State of Pennsylvania." (Exhibits A § 20 & C § 19.)

25. The Franchise Agreement was amended on May 25, 2010, October 18, 2012 and November 18, 2014. A true and correct copy of the amendments is attached hereto as Exhibits B-D. In the October 18, 2012 amendment, the provisions regarding the term of the franchise and

5

renewal procedures and immediate grounds for termination were revised. (Exhibit C.) In the November 18, 2014 amendment, Shannon Thompson was added as a franchisee. (Exhibit D.)

## DEFENDANTS' BREACHES OF THE FRANCHISE AGREEMENT

26. In approximately mid-January 2018, LAS learned that Defendants were operating a home care giving consulting business called The Home Health Group, LLC, apparently in violation of the Franchise Agreement.

27. Subsequently, LAS reviewed and analyzed the website and Facebook page of The Home Health Group, LLC.

### The Home Health Group, LLC's Website

28. The Home Health Group, LLC's website confirms that it is a home care consulting business that provides support and training to "start-ups" and potential entrants into the home care industry. It states expressly on its website that it provides "Home Care Regulation Consulting and Solutions." http://www.thehomehealthgroup.com/about-us/ (last visited April 10, 2018). The website further explains: "The Home Health Group, LLC is a consulting firm that specializes in background screening, due diligence, small business growth, software consulting and comprehensive license compliance. We are here to help you navigate a complex set of governmental regulations that are growing and changing on a regular basis. Compliance is vital to the success of your business, let us help keep you compliant." (*Id.*)

29. The Home Health Group, LLC advertises on its website its consulting services on various home care topics, including: compliance with Minnesota Department of Health Laws and Regulations, background screening, due diligence, small business growth, software consulting, comprehensive license compliance, dementia care, and caregiver poaching. (*See generally* http://www.thehomehealthgroup.com.)

6

30.  On the "Contact Us" page of its website, The Home Health Group, LLC identifies

Defendants as contacts for the company and provides their Home Health Group, LLC email

addresses: sthompson@thehomehealthgroup.com and cthompson@thehomehealthgroup.com.

(*See generally* http://www.thehomehealthgroup.com/contact-us/.)

31.  On that same page, The Home Health Group, LLC lists as its business address

3550 Lexington Ave. N #211, Shoreview, MN 55126 – the same address used by Defendants'

LAS Visiting Angels franchise.  (*Id.*; *compare* https://www.visitingangels.com/senior-homecare-

shoreview-minnesota-55126_587 and https://www.visitingangels.com/mn/homecare-providers

(LAS's website pages linking prospective customers seeking home care in the Twin Cities Metro

area and surrounding communities to Defendants at 3550 Lexington Ave. N #211, Shoreview,

MN 55126).

32.  The Home Health Group, LLC identifies Defendant Shannon Thompson as a

consultant on its website:

> Shannon Thompson – Consultant
>
> Shannon brings with him a wealth of knowledge he acquired
> performing under many job titles for the past 20 years.  Some of
> which include; investigator with Pinkerton Investigations, Chief
> Operation Office[r], Chief Financial Officer.
>
> Shannon is also our resident software expert and excels at training
> staff on scheduling and accounting programs.  He is proficient with
> many types of software and apps including: Many different
> scheduling   software   platforms,   Microsoft   Office   Suite,
> Quickbooks, WordPress and many more.

*See* http://www.thehomehealthgroup.com/about-us/.

33.  The Home Health Group, LLC's website announced on or about November 21, 2017

that the company would host a seminar on "[Minnesota Department of Health] Laws and

Regulations *for Home Health Care*" at the New Brighton Community Center in New Brighton,

7

Minnesota to be held on January 16, 2018." (*See*

http://www.thehomehealthgroup.com/2017/11/the-first-seminar-of-2018-is-scheduled/ (last visited

April 9, 2018).)

      34.  The Home Health Group, LLC's website confirms that Defendants are disclosing

LAS's confidential and proprietary information, business methods and trade secrets.  For example,

Defendants tout their ability to provide specific pre-employment screening procedures for

caregiver applicants:

> We can provide the following pre-employment screening services.
>
> > > County Criminal History
> >
> > > Federal District Court
> >
> > > National Criminal Database
> >
> > > Motor Vehicle Reports
> >
> > > Sex Offender Registry
> >
> > > Social Security Verification
> >
> > > Reference Checks
> >
> > > Professional Credential Verification

(*See http://www.thehomehealthgroup.com/pre-employment-screening/* (last visited April 9,

2018).)

      35.  LAS's confidential "Caregiver Screening Policy," revised on January 18, 2011, and

contained in LAS's confidential Operations Manual given to Defendants, sets forth a virtually

identical list.

      36.  While Defendants have reworded and reordered the requirements of LAS's Caregiver

Screening Policy, the services Defendants offer on The Home Health Group, LLC website are in

8

sum and substance identical to those required by LAS in its confidential Operations Manual, following LAS's costly and time-consuming review of such procedures in 2010.

37.  This is but one example of the confidential information of LAS being misappropriated and divulged to consulting clients and/or the public by Defendants.

38.  In addition, the content of Defendants' consulting seminars is also likely to include the confidential and proprietary information and trade secrets of LAS, given that any and all knowledge of the home caregiving industry possessed by Defendants was necessarily obtained from LAS.

39.  Prior to entry into the Franchise Agreement in 2009, Defendant Carolyn Thompson had no knowledge of, or experience in, the home caregiving industry.

40.  Prior to being added to the Franchise Agreement in 2014, Defendant Shannon Thompson had no knowledge of, or experience in, the home caregiving industry.

### The Home Health Group, LLC's Facebook Page

41.  The Home Health Group, LLC also maintains a Facebook page ("the Facebook page"). (*See* https://www.facebook.com/pg/Thehomehealthgroup/services/?ref=page_internal (last visited April 9, 2018)).

42.  The Facebook page describes the company as a "Consulting Agency in Shoreview, Minnesota" and refers visitors to The Home Health Group, LLC's website.  (*Id.*)

43.  The Facebook page provides a link labeled "About," which explains, "The Home Health Group, LLC is a ***consulting firm*** that is dedicated to aiding business' [*sic*] ***in the home health care industry***." (*See* https://www.facebook.com/pg/Thehomehealthgroup/about/?ref=page_internal (last visited April 9, 2018) (emphases added).  The "About" page refers visitors to The Home Health Group,

9

LLC's website and provides Defendant Shannon Thompson's The Home Health Group, LLC email address.  (*Id.*)

44.  The Facebook page includes a tab entitled "Events," where the company announced a May 3, 2017 seminar on "[Minnesota Department of Health] Laws and Regulations *for Home Health Care*" at the New Brighton Community Center in New Brighton, Minnesota.  (*See* https://www.facebook.com/events/282200705551581/ (last visited April 9, 2018) (emphasis added).)  The Events tab explains that the May 3 seminar addressed the following topics:

> Review of all laws & regulations pertaining to home care providers in Minnesota
>
> Basic License
>
> Comprehensive License
>
> Client Policies & Procedures, record keeping
>
> Medication Set up & Administration
>
> Delegated task
>
> Caregiver competency, training, record keeping
>
> Various other Laws & Regulations for Home Health Care Agencies
>
> Auditor Survey

(Id.)

## LAS'S DEMAND THAT DEFENDANTS CEASE
## OPERATIONS OF THE HOME HEALTH GROUP, LLC

45.  Based on the website and the Facebook page of The Home Health Group, LLC described above, LAS concluded that Defendants are breaching the Franchise Agreement, as they are the principals and consultants of a home caregiving consulting business, The Home Health Group, LLC, that has advised and continues to advise actual and/or potential competitors of LAS regarding non-medical home health caregiving.

SL1 1516634v5 108588.00002

46. Based on the website and the Facebook page of The Home Health Group, LLC described above, LAS also concluded that Defendants have misappropriated and divulged – and continue to misappropriate and divulge – confidential and proprietary information, business methods, and trade secrets of LAS to actual and/or potential competitors of LAS.

47. In approximately mid-February 2018, LAS contacted Defendants regarding their breaches of the Franchise Agreement.

48. On a telephonic conference call with LAS Vice President and General Manager Dan Drennen, Defendant Carolyn Thompson admitted that – through The Home Health Group, LLC – she was providing consulting services to startup businesses in the home caregiving industry. She argued, however, that notwithstanding the company's name (*i.e.,* The ***Home Health*** Group, LLC), it provides seminars only for startups that provide "housing with services," rather than "in-home services" and, as a result, do not compete with LAS or its Visiting Angels franchisees.

49. On or about February 12, 2018, Mr. Drennen emailed Defendants:

> This will serve as a recap of our conversation.
>
> ***LAS is demanding that you immediately cease and desist all operations of your consulting services business which we have determined to be a violation of your Franchise Agreement. In addition, we're demanding a full list of all clients past and present along with a full accounting of all revenue this business has generated since its inception.***
>
> Carolyn, you stated on this call that the services you provide are exclusively to "Housing with services" clients, and not to "in-home" care companies. However, ***your own website expressly states the services you provide are to the assisted living and home health care industries.*** The latter fails squarely under your Covenant Not To Compete.

A true and correct copy of Mr. Drennen's February 12, 2018 email is attached hereto as Exhibit E (email string dated February 12 and 13, 2018).

11

50. Defendants' denial that their consulting company provides consulting services to startups in the home caregiving industry is belied by the company's name and conclusively refuted by the contents of the company's website and Facebook page, as described above.

51. On or about February 13, 2018, Defendants responded to Mr. Drennen's February 12, 2018 email. (Exhibit E.)  Defendant Carolyn Thompson wrote that she had "made the decision to sell [her] franchise." (*Id.*)  She did not agree to cease operations of The Home Health Group, LLC, nor did she provide the requested client list or accounting of that company. (Exhibit E.)

52. That same day, in response, Mr. Drennen explained that operating the consulting business after selling the franchise would still violate the post-term covenant set forth in the Franchise Agreement. (Exhibit E.)  Section 13.2 of the Franchise Agreement provides that after the franchise is terminated, the franchisee "may not continue to engage in any home caregiving business for homebound elderly and convalescing clients … either directly or indirectly, as an owner, partner, consultant, director or in any other capacity for a period of two years from the date of termination within a distance of twenty miles from any part of your Protected Territory." (Exhibit A § 13.2.)

53. Throughout the balance of February, Defendants continued to operate The Home Health Group, LLC, in contravention of Mr. Drennen's February 12, 2018 email. (Exhibit E.)

54. On or about February 28, 2018, counsel for LAS sent Defendants a Notice of Default notifying them of their defaults under the Franchise Agreement and further notifying them that they had sixty (60) days within which to cure those defaults and ninety (90) days before termination, as required by Minnesota law.  A true and correct copy of the Notice of Default is attached hereto as Exhibit F.  The Notice stated:

> It has come to Franchisor's attention that Franchisee is conducting a consulting business that constitutes a competitive activity, in

12

violation of Section 15 of the Franchise Agreement. The Franchisor hereby notifies Franchisee that it is IN DEFAULT of the Franchise Agreement and demands:

1. Franchisee immediately cease and desist operation of the consulting business;

2. Franchisee provide Franchisor with an accounting of the gross revenues received from such competitive activity.

(Exhibit F.)

55.   Again, Defendants did not cure their defaults after receiving LAS's counsel's February 28, 2018 Notice of Default letter (Exhibit F) and did not provide the requested accounting.

56.   Beginning on or about March 6, 2018 and continuing through March 28, 2018, the parties engaged in confidential settlement discussions.

57.   In early April 2018, LAS concluded that:  (1) Defendants were not complying with either the February 12, 2018 email (Exhibit E) or the February 28, 2018 Notice of Default letter (Exhibit F); and (2) the parties would not be able to resolve their dispute without Court intervention.

58.   In recent weeks, LAS has further learned that in approximately November 2015, approximately a year after becoming a franchisee of LAS (*see* Exhibit D), Shannon Thompson signed and filed a Certificate of Organization with the Minnesota Secretary of State, forming a domestic limited liability corporation called The Home Health Group, LLC.  A true and correct copy of Defendants' Certificate of Organization is attached hereto as Exhibit G.  The Certificate of Organization lists Carolyn Thompson and Shannon Thompson as two of the company's three organizers.  (Exhibit G.)

SL1 1516634v5 108588.00002

59. LAS has also learned recently that The Home Health Group, LLC maintains a LinkedIn profile. (*See* https://www.linkedin.com/company/the-home-health-group-llc/ (last visited April 9, 2018)).

60. In that profile, The Home Health Group, LLC describes itself as "a ***consulting firm that is dedicated to aiding business' [sic] in the home health care industry*." (*Id.*) (emphasis added). It continues: "We are here to help you navigate a complex industry that is growing and changing on a daily basis. From background checks to training and consulting we have the experience and knowledge to help your business progress and flourish." (*Id.*)

## COUNT I

## BREACH OF CONTRACT – INJUNCTIVE RELIEF

61. LAS incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

62. Defendants entered into a valid, binding and enforceable written agreement with LAS, *i.e.,* the Franchise Agreement. (Exhibits A-D.)

63. LAS has performed all of the obligations required of it under the Franchise Agreement.

64. Despite LAS's performance, Defendants have breached the Franchise Agreement by operating a home caregiving business – a home care consulting company. The Franchise Agreement expressly defines "engaging" to include "activities whether direct or indirect, as an individual proprietor, partner, stockholder, director, officer, principal, broker, agent, employee, consultant or lender." (Exhibit A § 15.)

65. Defendants have operated and are continuing to operate a consulting company in the home caregiving industry.

14

66. Defendants have been for several years and continue to be the principals of The Home Health Group, LLC, a consulting company in the home caregiving industry.

67. Defendant Shannon R. Thompson has been for several years and continues to be a consultant of The Home Health Group, LLC, a consulting company in the home caregiving industry.

68. Defendants have been for several years and continue to be individual proprietors, partners, stockholders, directors, officers, and/or employees of The Home Health Group, LLC, a consulting company in the home caregiving industry.

69. As a direct and proximate result of these various breaches, LAS has suffered irreparable harm through the loss of its goodwill and injured relationships with its other franchisees, as well as the misappropriation and disclosure of its confidential and proprietary information, business methods, and trade secrets.

70. The damages that LAS has sustained and will continue to sustain cannot be ascertained, nor can such harm be adequately compensated for in monetary damages.

71. LAS has no adequate remedy at law because the harm it has suffered and will continue to suffer, as set forth above, including disclosure of confidential and proprietary information and misappropriation of trade secrets, loss of goodwill, and interference with other franchise relationships, cannot be adequately compensated in monetary damages.

72. LAS has suffered and will continue to suffer immediate and irreparable harm unless and until Defendants are enjoined from committing the wrongful acts set forth above.

73. Defendants are contractually obligated to pay all reasonable expenses, including attorneys' fees and expenses, incurred by LAS in enforcing the Franchise Agreement, in the event LAS prevails in this proceeding.  (Exhibit A § 10.)

SL1 1516634v5 108588.00002

## COUNT II

## BREACH OF CONTRACT – MONEY DAMAGES

74.  LAS incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

75.  In the alternative, as a direct and proximate result of Defendants' breaches set forth above and incorporated herein by reference, LAS has suffered money damages, in an amount to be determined at trial, including, without limitation, 15% of the Gross Revenues generated by the Home Health Group, LLC during the term of the franchise.  (*See* Exhibit A § 15.)

## COUNT III

## UNFAIR COMPETITION

76.  LAS incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

77.  Defendants' conduct is a violation of the common law of unfair competition and is an unfair trade practice under the common law.

78.  LAS has suffered and will continue to suffer money damages as a result of Defendants' conduct in an amount to be determined at trial.

## COUNT IV

## DECLARATORY JUDGMENT

79.  LAS incorporates the allegations contained in the preceding paragraphs as if fully set forth in this paragraph.

80.  Defendants' failure to comply with the terms of the Franchise Agreement creates an actual controversy between LAS and Defendants concerning the rights and obligations contained in the Franchise Agreement.

16

81.   LAS, therefore, requests that the Court declare Defendants to be in violation of the Franchise Agreement, including, without limitation, Section 15.

WHEREFORE, LAS prays as follows:

(a)   That the Court enters judgment against Defendants;

(b)   That the Court issues a preliminary and permanent injunction enjoining Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from:

(i)   Engaging in any home caregiving business during the term of the franchise;

(ii)   Operating The Home Health Group, LLC or any home caregiving business during the term of the franchise;

(iii)   Consulting or advising on behalf of The Home Health Group, LLC or any home caregiving business during the term of the franchise;

(iv)   Owning, maintaining, engaging in, being employed by, financing, assisting or having any interest in any home caregiving business during the term of the franchise;

(v)   Serving as an individual proprietor, partner, stockholder, director, officer, principal, broker, agent, employee, consultant or lender to The Home Health Group, LLC, or any home caregiving business during the term of the franchise; and

(vi)   Communicating, divulging, disclosing or using for the benefit of any person, persons, partnership, association or entity, any confidential or proprietary information, trade secrets, knowledge, business methods or knowhow communicated or disclosed to Defendants by LAS or its agent(s).

(c)   That the Court orders Defendants to provide to LAS an accounting of the Gross Revenues generated by The Home Health Group, LLC during the term of the franchise;

(d)   That the Court enters judgment against Defendants, jointly and severally, for compensatory and consequential damages to LAS in an amount to be determined at trial, for their

breaches of the Franchise Agreement, including, without limitation, 15% of the Gross Revenues generated by The Home Health Group, LLC during the term of the franchise;

(e)  That the Court awards pre-judgment and post-judgment interest, as permitted by law;

(f)  That the Court declares that Defendants have breached the Franchise Agreement and, among other things, have violated the Covenant Not to Compete set forth in Section 15 of the Franchise Agreement;

(g)  That the Court awards LAS its reasonable expenses, including attorneys' fees and costs from Defendants, and other expenses reasonably and necessarily incurred in enforcing the Franchise Agreement, in the event that LAS prevails in this action, pursuant to Section 10 of the Franchise Agreement; and

(h)  That the Court awards such other additional and separate relief as the case may require and/or that the Court may deem appropriate, just and proper.

STEVENS & LEE, P.C.

Dated:  April 11, 2018                    By _Neil C. Schur_____
                                              Neil C. Schur
                                              PA Attorney Id. No. 79068
                                              1818 Market Street, 29th Floor
                                              Philadelphia, Pennsylvania  19103
                                              (215) 751-1944 (ph)
                                              (610) 371-7956 (fax)
                                              ncsc@stevenslee.com

                                          Attorneys for Plaintiff Living Assistance Services, Inc.

SL1 1516634v5 108588.00002

## **VERIFICATION**

I, Dan Drennen, am the Vice President and General Manager of Plaintiff Living Assistance Services, Inc. ("LAS") and am authorized to make this Verification on LAS's behalf. I am familiar with LAS's business operations, including its business dealings and its relationship with its franchisees generally and with Defendants in particular. The facts alleged in the foregoing Verified Complaint for Injunctive and Other Relief are true and correct to the best of my personal knowledge and information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 10, 2018

_____
Dan Drennen